## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>MASTERNAUT LIMITED D/B/A<br>MICHELIN CONNECTED FLEET,<br><br>Defendant. | Civil Action No. 2:25-cv-00351<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against Masternaut Limited d/b/a MICHELIN Connected Fleet ("Masternaut" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 6,647,270 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/6647270?requestToken=eyJzdWIiOiIyZTFjZmNjYi05NTVmLTRiOWUtOGQ2Mi04OGI5YzY3MGI3ZGYiLCJ2ZXIiOiI4OTdlODgxMS03Yzk1LTQ0MmMtYmM4Ni03Y2M0NjcwNmMzNDciLCJleHAiOjB9 |
| 2. | 7,092,723 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/7092723?requestToken=eyJzdWIiOiJmMWJkNmRjZS00NzRiLTQzMjgtYjJjZi0yZmJhZTJiYWZiMGQiLCJ2ZXIiOiJkZmMzN2M2Yi1kYzRiLTRiZGItYWYxOC01MGU4NGNjMDEzZWMiLCJleHAiOjB9 |

| | Patent No. | Reference |
|---|---|---|
| 3. | 7,123,926 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/7123926?requestToken=eyJzdWIiOiI3MzVjZGUxYS01ZjhkLTQzNjgtYThmOC03ZTdiYTZiZjYyNDEiLCJ2ZXIiOiJiZWQwZWI1Yi1jNmI3LTRhYTItYjk1OC1lNGZlMTJiY2JiODQiLCJleHAiOjB9 |
| 4. | 7,463,896 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/7463896?requestToken=eyJzdWIiOiI4MWI3MjA1Ni1mYjZkLTRmYTMtYTViNS03ODNiMDQ3YWU5NmQiLCJ2ZXIiOiJhYmQzMTk1NC11YTRjLTQxNWUtYTNiNi01OTY4NDZlODZmN2IiLCJleHAiOjB9 |
| 5. | 7,783,304 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/7783304?requestToken=eyJzdWIiOiIwYTBiNGViMC0zMjIwLTQ0YmEtOWQzNC0zZmUyYzE5MzFjM2MiLCJ2ZXIiOiIzNWEzYTg2ZS04MGVlLTRhZGItOGNkZC0yNTY2YjdkNzI3NzgiLCJleHAiOjB9 |
| 6. | 9,299,044 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/9299044?requestToken=eyJzdWIiOiI2MTdiNDMwOS0xN2ExLTQyZTctOGRiNC0wYTg4N2Y5MDFmNGIiLCJ2ZXIiOiJjYjYxY2QxNi01M2M3LTQ5MDItOWM2Mi0xY2Q4N2ZmMzA5ODEiLCJleHAiOjB9 |
| 7. | 9,747,565 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/9747565?requestToken=eyJzdWIiOiJjYmMzZDQzMy1kMTAxLTQ1NDItYmQ4MS1kOGEzNmI0YWNhNjgiLCJ2ZXIiOiI3N2NiYmZhNi02M2U4LTQxYzctOGNiMi1hMzUzODgzMTViZWMiLCJleHAiOjB9 |
| 8. | 10,671,949 | https://ppubs.uspto.gov/external/print/pdfRedirectDownload/10671949?requestToken=eyJzdWIiOiIzMjYyZWM2MS04NWQwLTRhYWItYTFiZC0zZjIzNjcwNzU4ZWMiLCJ2ZXIiOiJiOTBhODBjYS1jYTEzLTRmMmMtODE5NS0yZjRkZTgzNTJkNzEiLCJleHAiOjB9 |

2.    Plaintiff seeks monetary damages.

## **PARTIES**

3.    Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.    Upon information and belief, Defendant Masternaut Limited d/b/a MICHELIN Connected Fleet is a company duly organized under the laws of the United Kingdom with its

registered office at Priory Park, Great North Road, Aberford, Leeds, West Yorkshire, LS25 3DF, England, United Kingdom.

5.     Upon public information and belief, Defendant trades under the brand name "MICHELIN Connected Fleet." *See Legal Notice*, MICHELIN CONNECTED FLEET (last visited Apr. 2, 2025), https://connectedfleet.michelin.com/legal-notice/.

6.     Upon public information and belief, Defendant is "a fully-owned subsidiary within Michelin." *See Michelin acquires Masternaut*, MASTERNAUT (May 16, 2019), https://www.masternaut.com/news/posts/michelin-acquires-masternaut/.

7.     Upon information and belief, Defendant engages in making, using, selling, offering for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

## JURISDICTION AND VENUE

8.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-7 above as though fully set forth in their entirety.

9.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

11.     Defendant is subject to this Court's specific and general personal jurisdiction under due process because of Defendant's substantial business in this District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

12.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in this State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

13.     Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, Defendant has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Texas residents and consumers.

14.     Upon information and belief, Defendant ships and causes to be shipped into the District infringing products and materials instructing their customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for

installation, operation, and service at locations within this District.

15.    Defendant markets, sells, and delivers Accused Products in this district, and has committed acts of infringement in this District.

16.    Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products in an infringing manner.

17.    Defendant has committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

## THE ACCUSED PRODUCTS

18.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-17 above as though fully set forth in their entirety.

19.    Defendant uses, causes to be used, provides, supplies, or distributes one or more computing devices, including, but not limited to, **the MICHELIN Connected Fleet software/application/website, MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, ELD tablets, SmarterDriver app, Transport-Logistics, Field Services, Vehicle Tracking, Cost Control Solutions, On-Time Delivery And Productivity Solutions, Cargo Maintenance Solutions, Electric Vehicle Fleet Management, Advanced Data Analytics, Eld & Ifta Compliance Solutions, Driver Mobile App For Vehicle Checks, Camera Video Monitoring, Brake-Performance-Monitoring, Tyre-Pressure-And-Temperature-Monitoring, Predictive Tyre Maintenance, NexTraq® Dashcam, NexTraq® Vehicle Inspection, ELD devices such as in-cab tablets, OBD devices (such as M210, etc.), Telematics hardware, such as  Tire mounted sensor, TMS AF-02, TMS AL-01, Mems**

Transceiver A, Mems 3g/Gps Module, Mems Evolution Active Antenna, Mems4 Lte/Gps Module Transceiver, Mems Rf 433mhz Module, Mems Evolution-4 Liquid Proof Sensor, Mems Evolution 4 Dry Sensor, Mems Dry Sensor Sp40, Mems Liquidproof Sensor and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated, software, functionality, hardware and applications (collectively, the "Accused Products").

20.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,647,270

21.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

22.    For purposes of this Count I, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN fleet-management-solutions/Application/Software/Website like MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, Transport-Logistics, Field Services, Vehicle Tracking, Cost Control Solutions, On-Time Delivery And Productivity Solutions, Cargo Maintenance Solutions, Electric Vehicle Fleet Management, Advanced Data Analytics, Eld & Ifta Compliance Solutions, Driver Mobile App For Vehicle Checks, Camera Video Monitoring, Brake-Performance-Monitoring, Tyre-Pressure-And-Temperature-Monitoring, Predictive Tyre Maintenance, NexTraq® Dashcam, NexTraq® Vehicle Inspection, ELD devices such as in-cab tablets, OBD devices (such as M210, etc.), Telematics hardware, such as  Tire mounted sensor, TMS AF-02, TMS AL-01, Mems Transceiver A, Mems 3g/Gps Module, Mems Evolution Active Antenna, Mems4 Lte/Gps Module**

**Transceiver, Mems Rf 433mhz Module, Mems Evolution-4 Liquid Proof Sensor, Mems Evolution 4 Dry Sensor, Mems Dry Sensor Sp40, Mems Liquidproof Sensor** and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

23.    Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No. 6,647,270 (the "'270 patent"), including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

24.    The USPTO duly issued the '270 patent on November 11, 2003, after full and fair examination of Application No. 09/659,074 which was filed September 11, 2000.  *See* '270 patent at 1.

25.    The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

26.    The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '270 patent.

28.     Defendant has directly infringed one or more claims of the '270 patent by manufacturing, selling, offering for sell, importing, using, providing, supplying, or distributing the Accused Products.

29.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent, as detailed in **<u>Exhibit A</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270).

30.     For example, as detailed in <u>Exhibit A</u>, the Accused Products include a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes:  a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information, whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit.

31.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,092,723**

32.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

33.    For purposes of this Count II, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN fleet-management-solutions/Application/Software/Website like MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, Transport-Logistics, Field Services, Vehicle Tracking, Cost Control Solutions, On-Time Delivery And Productivity Solutions, Cargo Maintenance Solutions, Electric Vehicle Fleet Management, Advanced Data Analytics, Eld & Ifta Compliance Solutions, Driver Mobile App For Vehicle Checks, Camera Video Monitoring, Brake-Performance-Monitoring, Tyre-Pressure-And-Temperature-Monitoring, Predictive Tyre Maintenance, NexTraq® Dashcam, NexTraq® Vehicle Inspection, ELD devices such as in-cab tablets, OBD devices (such as M210, etc.), Telematics hardware, such as Tire mounted sensor, TMS AF-02, TMS AL-01, Mems Transceiver A, Mems 3g/Gps Module, Mems Evolution Active Antenna, Mems4 Lte/Gps Module Transceiver, Mems Rf 433mhz Module, Mems Evolution-4 Liquid Proof Sensor, Mems Evolution 4 Dry Sensor, Mems Dry Sensor Sp40, Mems Liquidproof Sensor** and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

34.    The USPTO duly issued U.S. Patent No. 7,092,723 (the "'723 patent") on August 15, 2006, after full and fair examination of Application No. 10/679,784 which was filed October 6, 2003.

35.    Fleet Connect owns all substantial rights, interest, and title in and to the '723 patent,

including the sole and exclusive right to prosecute this action and enforce the '723 patent against infringers and to collect damages for all relevant times.

36.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

37.    The claims of the '723 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

38.    The written description of the '723 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.    Defendant has directly infringed, and continues to directly infringe, one or more claims of the '723 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

40.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 19 of the '723 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,092,723).

41.    For example, as detailed in Exhibit B, the Accused Products include a system for transmitting voice or data communications between a plurality of remote units, the system having an input including the voice or data communications and user input, each remote unit comprising:

a unique identifier; a transceiver configured to receive data by a wireless communication and to down-convert the received data from radio frequency (RF) to baseband, and to up-convert baseband data to RF for transmission as a wireless communication; a global positioning system receiver configured to receive a position signal; a microprocessor configured to receive the position signal and the received communication, and to generate the baseband communication by constructing at least one data packet from a plurality of data fields, at least one of the data fields including information derived from the position signal, the unique identifier of a sending remote unit, and the unique identifier of a receiving remote unit; and a memory configured to store the received data, the user input including information unique to the user, and said unique identifier.

42.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,123,926

43.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

44.     For purposes of this Count III, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN fleet-management-solutions/Application/Software/Website like MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, Transport-Logistics, Field Services, Vehicle Tracking, Cost Control Solutions, On-Time Delivery And Productivity Solutions, Cargo Maintenance Solutions, Electric Vehicle Fleet Management, Advanced Data Analytics, Eld & Ifta Compliance Solutions, Driver Mobile App For Vehicle Checks,  Camera Video**

Monitoring, Brake-Performance-Monitoring, Tyre-Pressure-And-Temperature-Monitoring, Predictive Tyre Maintenance, NexTraq® Dashcam, NexTraq® Vehicle Inspection, ELD devices such as in-cab tablets, OBD devices (such as M210, etc.), Telematics hardware, such as Tire mounted sensor, TMS AF-02, TMS AL-01, Mems Transceiver A, Mems 3g/Gps Module, Mems Evolution Active Antenna, Mems4 Lte/Gps Module Transceiver, Mems Rf 433mhz Module, Mems Evolution-4 Liquid Proof Sensor, Mems Evolution 4 Dry Sensor, Mems Dry Sensor Sp40, Mems Liquidproof Sensor and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

45.     The United States Patent and Trademark Office ("USPTO") duly issued the '926 patent issued on October 17, 2006 after full and fair examination by the USPTO of Application No. 10/705,674 which was filed on November 10, 2003. *See* '926 patent at 1. A Certificate of Correction was issued on August 27, 2013. *See id.* at 19.

46.     Fleet Connect owns all substantial rights, interest, and title in and to, the '926 patent including the sole and exclusive right to prosecute this action and enforce the '926 patent against infringers and to collect damages for all relevant times.

47.     The claims of the '926 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications system control and warning systems.

48.     The written description of the '926 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

49.     Upon information and belief, Defendant has directly infringed one or more claims of the '926 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing of the Accused Products.

50.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '926 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,123,926).

51.     For example, as detailed in Exhibit C, Defendant, through the use and provision of the Accused Products, performs a method for alerting a remote user to an emergency situation *via* a mobile unit installed in a vehicle, comprising: determining a geographic location of the mobile unit; determining an identity of the vehicle based on a unique identification stored in the mobile unit; determining a priority level associated with the emergency situation; assembling a header of a communication, the header including the geographic location of the mobile unit, the identity of the vehicle and the priority level, the header capable of being processed upon receipt by a second mobile unit to alert the remote user of the second mobile unit of the emergency situation based on the geographic location of the mobile unit, the identity of the vehicle and the priority level; and transmitting the communication to the second mobile unit.

52.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '926 patent.

53.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,463,896

54.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

55.    For purposes of this Count IV, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN fleet-management-solutions/Application/Software/Website like MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, Transport-Logistics, Field Services, Vehicle Tracking, Cost Control Solutions, On-Time Delivery And Productivity Solutions, Cargo Maintenance Solutions, Electric Vehicle Fleet Management, Advanced Data Analytics, Eld & Ifta Compliance Solutions, Driver Mobile App For Vehicle Checks, Camera Video Monitoring, Brake-Performance-Monitoring, Tyre-Pressure-And-Temperature-Monitoring, Predictive Tyre Maintenance, NexTraq® Dashcam, NexTraq® Vehicle Inspection, ELD devices such as in-cab tablets, OBD devices (such as M210, etc.), Telematics hardware, such as Tire mounted sensor, TMS AF-02, TMS AL-01, Mems Transceiver A, Mems 3g/Gps Module, Mems Evolution Active Antenna, Mems4 Lte/Gps Module Transceiver, Mems Rf 433mhz Module, Mems Evolution-4 Liquid Proof Sensor, Mems Evolution 4 Dry Sensor, Mems Dry Sensor Sp40, Mems Liquidproof Sensor** and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

56.    The USPTO duly issued U.S. Patent No. 7,463,896 (the "'896 patent") on December 9, 2008, after full and fair examination of Application No. 11/542,850 which was filed on

September 20, 2006. *See* '896 patent at 1. A Certificate of Correction was issued on August 13, 2013. *See id.* at 18.

57.     Fleet Connect owns all substantial rights, interest, and title in and to the '896 patent, including the sole and exclusive right to prosecute this action and enforce the '896 patent against infringers and to collect damages for all relevant times.

58.     The claims of the '896 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems for wireless vehicle tracking systems.

59.     The written description of the '896 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '896 patent.

61.     Defendant has directly infringed one or more claims of the '896 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

62.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '896 patent, as detailed in **<u>Exhibit D</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,463,896).

63.    For example, as detailed in <u>Exhibit D</u>, Defendant, through the use and provision of the Accused Products, performs a method for enforcing a vehicle code.  The method includes receiving a wireless communication signal by a first mobile unit having a unique identifier, the wireless communication signal transmitted by a second mobile unit associated with a vehicle; downconverting data in the received wireless communication signal from radio frequency to baseband; determining based on the downconverted data: a vehicle identifier associated with the vehicle, and a GPS position associated with the vehicle; determining by a system administrator a status of the vehicle using the vehicle identifier to monitor the vehicle for code enforcement, wherein the determining the status includes parsing the received wireless communication signal to determine the status of the vehicle; generating baseband message data indicating the status by constructing at least one data packet from a plurality of data fields, the data fields including the unique identifier of the first mobile unit and the vehicle identifier; and upconverting the baseband message data to radio frequency for transmission to the second mobile unit, thereby transmitting the upconverted baseband message data indicating the status of the vehicle.

64.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 7,783,304

65.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

66.    For purposes of this Count V, the "Accused Products" include Defendant's computing devices,    including,    but    not    limited    to,    **MICHELIN    fleet-management-**

**solutions/Application/Software/Website like MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, Transport-Logistics, Field Services, Vehicle Tracking, Cost Control Solutions, On-Time Delivery And Productivity Solutions, Cargo Maintenance Solutions, Electric Vehicle Fleet Management, Advanced Data Analytics, Eld & Ifta Compliance Solutions, Driver Mobile App For Vehicle Checks, Camera Video Monitoring, Brake-Performance-Monitoring, Tyre-Pressure-And-Temperature-Monitoring, Predictive Tyre Maintenance, NexTraq® Dashcam, NexTraq® Vehicle Inspection, ELD devices such as in-cab tablets, OBD devices (such as M210, etc.), Telematics hardware, such as Tire mounted sensor, TMS AF-02, TMS AL-01, Mems Transceiver A, Mems 3g/Gps Module, Mems Evolution Active Antenna, Mems4 Lte/Gps Module Transceiver, Mems Rf 433mhz Module, Mems Evolution-4 Liquid Proof Sensor, Mems Evolution 4 Dry Sensor, Mems Dry Sensor Sp40, Mems Liquidproof Sensor** and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications

67.    The USPTO duly issued U.S. Patent No. 7,783,304 (the "'304 patent") on August 24, 2010, after full and fair examination of Application No. 12/546,645, which was filed on August 24, 2009.  A Certificate of Correction was issued on May 28, 2013.

68.    Fleet Connect owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce the '304 patent against infringers and to collect damages for all relevant times.

69.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

70.    The claims of the '304 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

71.    The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72.    Defendant has directly infringed one or more claims of the '304 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

73.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 of the '304 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,783,304).

74.    For example, as detailed in Exhibit E, Defendant, through the use and provision of the Accused Products, performs a method comprising: establishing a communication link between a first mobile unit and a website; searching a list of users via a log comprising an address of a second mobile unit; outputting a match comprising the address of the second mobile unit via a display; constructing a communication comprising a plurality of information fields, the plurality of information fields comprising an address of the first mobile unit and the address of the second mobile unit; transmitting the communication from the first mobile unit, through the website, to the

second mobile unit; and storing information related to the communication in a communication log.

75.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 9,299,044

76.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

77.     For purposes of this Count VI, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN Connected Fleet software/application/website, MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, ELD tablets**, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated, software, functionality, hardware and applications.

78.     The USPTO duly issued U.S. Patent No. 9,299,044 (the "'044 patent") on March 29, 2016 after full and fair examination by the USPTO of Application No. 14/480,297 which was filed on September 8, 2014.  See '044 patent at 1.

79.     Fleet Connect owns all substantial rights, interest, and title in and to the '044 patent, including the sole and exclusive right to prosecute this action and enforce the '044 patent against infringers and to collect damages for all relevant times.

80.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '044 patent.

81.     The claims of the '044 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods of managing mobile assets in the field such as personnel, equipment and inventory using handheld data management devices in the field.

82.     The written description of the '044 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.     Defendant has directly infringed one or more claims of the '044 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

84.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '044 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 9,299,044).

85.     For example, as detailed in Exhibit F, Defendant, through the use and provision of the Accused Products, performs a method, comprising: accessing, at a beginning of a work shift using a handheld device, at least one template stored on a server located remotely from the handheld device, the at least one template listing tasks that are assigned to be completed before an end of

the work shift; reporting a status of each of the tasks at least once during the work shift by synchronizing the handheld device to the server; and updating the at least one template stored on the server in response to the status with unfinished or new tasks.

86.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 9,747,565

87.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

88.    For purposes of this Count VII, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN Connected Fleet software/application/website, MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, ELD tablets**, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated, software, functionality, hardware and applications.

89.    The USPTO duly issued U.S. Patent No. 9,747,565 ("'565 patent") on August 29, 2017 after full and fair examination of Application No. 15/071,003 which was filed on March 15, 2016.

90.    Fleet Connect owns all substantial rights, interest, and title in and to the '565 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

91.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '565 patent.

92.    The claims of the '565 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the systems and methods of managing mobile assets in the field such as personnel, equipment and inventory using handheld data management devices in the field.

93.    The written description of the '565 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.    Defendant has directly infringed one or more claims of the '565 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

95.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '565 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 9,747,565).

96.    For example, as detailed in Exhibit G, Defendant, through the use and provision of the Accused Products, performs a method comprising: accessing a template stored on a server located remotely from a handheld device, the template listing tasks to be completed before an end of a work shift; reporting a status of each of the tasks at least once by synchronizing the handheld

device to the server; and updating the template responsive to the status with unfinished or new tasks at the end of the work shift.

97.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII:    INFRINGEMENT OF U.S. PATENT NO. 10,671,949

98.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

99.    For purposes of this Count VIII, the "Accused Products" include Defendant's computing devices, including, but not limited to, **MICHELIN Connected Fleet software/application/website, MyConnectedFleet by Michelin, Nextraq View, Nextraq Connect, SmarterDriver app, ELD tablets**, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated, software, functionality, hardware and applications.

100.    The USPTO duly issued U.S. Patent No. 10,671,949 ("'949 patent") on June 2, 2020 after full and fair examination of Application No. 15/660,685 which was filed on July 26, 2017.

101.    Fleet Connect owns all substantial rights, interest, and title in and to the '949 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

102.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'949 patent.

103.     The claims of the '949 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the systems and methods of managing mobile assets in the field such as personnel, equipment and inventory using handheld data management devices in the field.

104.     The written description of the '949 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

105.     Defendant has directly infringed one or more claims of the '949 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

106.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '949 patent, as detailed in **<u>Exhibit H</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 10,671,949).

107.     For example, as detailed in <u>Exhibit H</u>, Defendant, through the use and provision of the Accused Products, performs a method comprising: accessing a template stored on a server located remotely from a handheld device, the template listing a first set of tasks to be completed in a first predetermined time period; reporting, after a time of the accessing, a status of each of the tasks of the first set of tasks by synchronizing the handheld device to the server; and updating the template responsive to the status, the updated template including a second set of tasks to be

completed in a second predetermined time period.

108.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

109.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

110.    Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

c.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.    That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 7, 2025</u>                    Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

* Admitted to the Eastern District of Texas

**List of Exhibits:**

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270
B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,092,723
C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,123,926
D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,463,896
E.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,783,304
F.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,299,044
G.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,747,565
H.  Evidence of Use Regarding Infringement of U.S. Patent No. 10,671,949